UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE HAIRSTON,

*Plaintiff*,

v.

THE WINIFRED MASTERSON BURKE REHABILITATION HOSPITAL, VALERIE VERMIGLIO-KOHN, PAULINE JONES, *and* TRESAL JONES SCOTT,

*Defendants*.

No. 25-CV-3908 (KMK)

OPINION & ORDER

Appearances:

Lindsay Michelle Goldbrum, Esq.
Megan Sarah Goddard, Esq.
Goddard Law PLLC
New York, NY
*Counsel for Plaintiff*

Maura A. Mastrony, Esq.
Mathew William Beckwith, Esq.
Littler Mendelson P.C.
New Haven, CT
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Kyle Hairston ("Plaintiff") brings this Action against the Winifred Masterson Burke Rehabilitation Hospital ("Burke Rehabilitation"), Valerie Vermiglio-Kohn ("Vermiglio-Kohn"), Pauline Jones ("Jones"), and Tresal Jones Scott ("Jones Scott") (together, "Defendants"), asserting a series of discrimination claims on the basis of race, sexual orientation, and disability pursuant to 42 U.S.C. § 1981; Section 296(1)(a) of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); retaliation in violation of the NYSHRL; aiding and abetting discrimination and retaliation in violation of the NYSHRL; interference and retaliation

in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; and unequal pay in violation of § 194 of the New York Labor Law, N.Y. Lab. Law § 190 et seq. (*See generally* Am. Compl. (Dkt. No 16).) Before the Court is Defendants' Partial Motion To Dismiss the Amended Complaint. (*See* Defs.' Mot. To Dismiss (Dkt. No. 24).) For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from the Amended Complaint and are assumed to be true for the purposes of deciding this motion.

Plaintiff Kyle Hairston is a Black, gay male who has been diagnosed with hypertension, morbid obesity, and asthma. (Am. Compl. ¶¶ 13–14.) In January 2020, he began working at Burke Rehabilitation as a laundry attendant. (*Id.* ¶ 21.) In or around October 2020, he was promoted to transport aide. (*Id.* ¶ 24.) In this new role, Plaintiff reported directly to Jones, who reported to Vermiglio-Kohn. (*Id.* ¶ 25.) He also worked with another transport aide, Jones Scott. (*Id.* ¶ 42.) As a transport aide, Plaintiff noticed that he was treated differently from his white colleagues. (*Id.* ¶¶ 28–29.) For instance, Vermiglio-Kohn held Plaintiff to a different standard of conduct than his white counterparts, such as requiring that he seek permission to take restroom breaks, while not subjecting his white counterparts to such requirements. (*Id.* ¶¶ 31–32.) Plaintiff was also subject to anti-gay harassment by Jones Scott, who upon learning that Plaintiff is gay, repeatedly said things to him such as "God made man for woman and woman for man," that she did not "believe in the LGBTQ community," and that he was a "demon" because he was gay. (*Id.* ¶¶ 47–48, 73.) Plaintiff repeatedly complained to Jones and Vermiglio-Kohn about Jones Scott's homophobic comments, but they were never addressed. (*See, e.g.*, *id.* ¶¶ 52,

54, 56, 58.) After months of being treated this way, Plaintiff's work-related stress and anxiety caused him to gain over 50 pounds and experience worsening blood pressure and cholesterol, as well as headaches, dizzy spells, low energy, and depression. (*Id.* ¶¶ 106–107.) As a result, in the fall of 2021, Plaintiff's doctor "warned him he was at high risk for heart attack and stroke" and "recommended that he undergo bariatric surgery to help reduce his weight and blood pressure." (*Id.* ¶ 108.)

Plaintiff requested six weeks of leave in fall 2021 to undergo and recover from this surgery. (*Id.* ¶ 109.) After he requested leave, Defendants Jones and Vermiglio-Kohn discussed being short staffed, needing to juggle coverage, and "pressed the timing" of Plaintiff's surgery. (*Id.* ¶ 110.) Plaintiff felt management was exerting pressure on him because of staffing problems and therefore rescheduled his surgery from October to November 2021. (*Id.*)

Before approving his leave, Burke Rehabilitation's human resources department repeatedly requested additional information before approving his leave after a period of two weeks. (*Id.* ¶ 111.) Despite the fact that Plaintiff only told human resources and his supervisors of his upcoming surgery, one of Plaintiff's coworkers asked Plaintiff about his upcoming surgery. (*Id.* ¶ 112.) Upon information and belief, Burke Rehabilitation shared the fact of Plaintiff's upcoming surgery with his coworkers. (*Id.* ¶ 113.)

Plaintiff took medical leave from the end of November 2021 to early January 2022. (*Id.* ¶ 114.) Immediately after he returned, Plaintiff was staffed on the elevator by Jones Scott. (*Id.* ¶ 116.) Plaintiff had also been staffed in this position, which was uncomfortable due to high temperatures inside the elevator, prior to his leave. (*Id.* ¶ 104.) In January 2022, shortly after returning from leave, Plaintiff was experiencing gastrointestinal complications from his surgery which required him to wear a backpack containing a change of clothes and use the restroom on

short notice. (*Id.* ¶ 118.) During one instance where Plaintiff was rushing to the restroom, Vermiglio-Kohn followed him there and asked him in front of other staff and patients where he was going and why he needed his backpack in the bathroom. (*Id.* ¶ 119.) After Plaintiff explained why he needed the backpack, Vermiglio-Kohn told him he was not allowed to wear a backpack at work. (*Id.*) Plaintiff continued to wear his backpack because of his medical needs. (*Id.* ¶ 125.) In the spring of 2022, Plaintiff again experienced an episode in which he had to rush to the restroom. (*Id.* ¶ 126.) Vermiglio-Kohn again followed Plaintiff to the restroom and demanded to know where he was going. (*Id.* ¶ 127.) Even though Plaintiff explained why he was going to the restroom with his backpack, Vermiglio-Kohn and Jones issued a formal write-up against Plaintiff the following week, censuring him for wearing his backpack during work. (*Id.* ¶ 128.)

On or about June 28, 2022, Vermiglio-Kohn approached Plaintiff while he was using the restroom and informed him he would be written up for an unauthorized absence for using the restroom without prior authorization. (*Id.* ¶ 131.) Plaintiff reported this incident to a human resources representative. (*Id.* ¶ 132.) Instead of adopting any measures to address Plaintiff's complaint, the human resources representative "handed Plaintiff a piece of paper outlining breathing exercises and told him to 'reflect on the exercises before taking any actions.'" (*Id.* ¶ 138.) Despite this, Plaintiff continued to face harassment on the basis of his sexual orientation and disability in the coming months. (*Id.* ¶¶ 151, 153.)

In November 2022, Vermiglio-Kohn terminated Plaintiff's employment at Burke Rehabilitation because she believed he was not a "good fit" for the organization. (*Id.* ¶ 159.)

B. Procedural Background

Plaintiff filed his Complaint on June 27, 2025. (*See* Compl. (Dkt. No. 10).) On August 28, 2025, Plaintiff filed an Amended Complaint. (*See* Am. Compl. (Dkt. No. 16).) On October 17, 2025, Defendants moved to partially dismiss the Amended Complaint. (*See* Defs.' Mot. To Dismiss the Am. Compl. (Dkt. No. 24); and Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 24-1).) On November 12, 2025, Plaintiff filed his Opposition to Defendants' Motion To Dismiss. (*See* Pl.'s Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No. 25).) On December 3, 2025, Defendants replied. (*See* Defs.' Reply in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 26).)

## II. Discussion

A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint,

documents appended to the complaint or incorporated by reference, and matters of which judicial notice can be taken in ascertaining facts for a motion to dismiss).

## B. Analysis

### 1. NYSHRL Claims Against Individual Defendants

Defendants move to dismiss the discrimination and retaliation claims against Jones Scott (Counts Two and Four of the Amended Complaint) on the basis that Plaintiff has failed to allege supervisory liability such that she may be held liable under this statute. (Defs.' Mem. 11.)[1] Plaintiff responds that Jones Scott may be sued as an employer under the NYSHRL because she had the power to do more than carry out personnel decisions made by others. (Pl.'s Opp'n 5–6.) Plaintiff also asserts that the retaliation claim stands regardless because § 296(7) of the New York Human Rights Law applies to any *person* who "actually participates in the conduct giving rise to the plaintiff's . . . retaliation claim." (*Id.* at 8 (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012)).)

Defendants argue that Jones Scott cannot be liable because only individuals with an "ownership interest in the organization" or with "the power to do more than carry out personnel decisions made by others" are employers under this provision. (Defs.' Mem. 11 (quoting *Santana v. Mount Vernon City School Dist./Bd. of Educ.*, No. 20-CV-3212, 2023 WL 2876653, at *13 (S.D.N.Y. Apr. 7, 2023)).) They assert Jones Scott was not Plaintiff's supervisor, nor did she have the authority to hire or fire or set his schedule, hours, assignments or salary. (Defs.' Mem. 12.) They contend that the mere fact that Jones Scott told Plaintiff how to perform tasks and used her relationship with the people in charge of scheduling to dictate assignments is

---

[1] All references to the Complaint in this Opinion are to the Amended Complaint. (*See* Am. Compl. (Dkt. No. 16).)

insufficient to plead she was a supervisor. (*Id.*) In response, Plaintiff argues that Jones Scott "had the power to do more than carry out personnel decisions made by others," because she directed Plaintiff how to perform transports, "leveraged her relationship with scheduling to control and worsen assignments," "instigated threats and discipline-adjacent outcomes" after Plaintiff complained of discrimination and harassment, and "pressed to keep [Plaintiff] on the elevator post" after he returned from leave. (Pl.'s Opp'n 5–6.) Plaintiff asserts this is sufficient under the statute, which focuses on "power over personnel decision and working conditions, not on titles alone." (*Id.* 7.)

However, with respect to the discrimination claims, both Parties' arguments are premised on a misunderstanding of liability under NYSHRL § 296(1). While the statute indeed bars Plaintiff's discrimination claims against Jones Scott and the other individual defendants, it is not for the reason put forth by Defendants. The New York Court of Appeals clarified the definition of employer under the New York State Human Rights Law in *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454 (N.Y. 2021). In that case, the New York Court of Appeals explained that an individual employee at a defendant corporate employer would not be subject to suit—regardless of their position—under N.Y. Exec. L. § 296(1). *Bloomberg*, 167 N.E.3d at 458–60. This is because under "the state statutes," "a corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer." *Id.* at 459. Therefore, "the State HRL does not render employees liable as individual employers." *Id.* at 458 (citing *Patrowich v. Chem. Bank*, 473 N.E. 2d 11 (N.Y. 1984)); *see also Nezaj v. PS450 Bar and Rest.*, 719 F. Supp. 3d 318, 320 (S.D.N.Y. 2024) (citing *Doe* for the proposition that an "individual affiliated" with a corporate entity "cannot . . . qualify as the employer" under the NYSHRL, "even if the individual holds a high post at the employer or owns the entity"); *Belyea*

*v. City of Glen Cove*, No. 20-CV-5675, 2023 WL 1929787, at *2 (E.D.N.Y. Feb. 20, 2023) (noting that under *Doe*, "employees" cannot be held as "individual employers").

Plaintiff brings sexual orientation and disability discrimination claims under NYSHRL Section 296.1(a) against all Defendants, and race discrimination claims in violation of that same provision against Burke Rehabilitation and Vermiglio-Kohn. (*See* Am. Compl. ¶¶ 166–174, 175–180.) Because Defendants Vermiglio-Kohn, Jones, and Jones Scott are employees, they cannot be held liable under § 296(1)(a), so the claims against them are dismissed. *See Cho v. Osaka Zen Spa*, No. 19-CV-7935, 2026 WL 2640854, at *22 (S.D.N.Y. Sept. 8, 2026) (dismissing NYSHRL claims against an individual defendant because they could not qualify as an employer under the NYSHRL); *Stiler v. Amalgamated Life Ins. Co.*, No. 24-CV-8962, 2026 WL 867166, at *13 (S.D.N.Y. Mar. 30, 2026) (dismissing § 296(1) claim against individual defendants); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 289 (S.D.N.Y. 2024) ("The claims against the Individual Defendants, as Section 296(1) 'employers,' for disparate treatment discrimination and hostile work environment . . . must therefore be dismissed."); *Nezaj*, 719 F. Supp. 3d at 329 (dismissing Section 291(1) claims against director and co-owner of entity because he could not be held liable directly under that provision).

Unlike the discrimination provision of the NYSHRL, the statute's retaliation provision—and aiding and abetting provision—"do[es] *not* contain language limiting liability to employers." *Reichert v. Casa Sys., Inc.*, No. 24-CV-996, 2026 WL 867137, at *9 (S.D.N.Y. Mar. 30, 2026) (emphasis in original); *see also Nezaj*, 719 F. Supp. 3d at 330 ("[A]lthough the NYSHRL does not provide for direct liability for discrimination other than by an 'employer,' it makes it unlawful for 'any person' to retaliate."); N.Y. Exec. L. § 296(6) ("It shall be an unlawful discriminatory practice for *any person* to aid, abet, incite, compel or coerce the doing of any of

the acts forbidden under this article[.]" (emphasis added)); *id.* § 296(7) ("It shall be an unlawful discriminatory practice for *any person* engaged in any activity to which this section applies to retaliate or discriminate against any person because [of the person's protected activity] . . ." (emphasis added)). The *Doe* court explained that it did not hold individuals could *never* be held directly liable under the NYSHRL—rather, it held that individuals are not "employers" in the meaning of the statute, and so cannot be held liable under § 296(1). *Doe*, 167 N.E.3d at 459–60 ("differentiating between the liable party (employer) and the party committing the offending conduct (employee or agent with managerial or supervisory responsibility)" in the context of the NYCHRL, which "language [is] like that found in the State HRL").

Although the Complaint invokes § 296(1) of the NYSHRL when articulating the retaliation claim, in opposing the Motion, Plaintiff asserts Jones Scott could be held liable under § 296(7), which, as noted, proscribes retaliatory conduct by "any person." (Am. Compl. ¶ 182, Pl.'s Opp'n 8.) *See* N.Y. Exec. L. § 296(7). The Court assumes the invocation of § 296(1) was a scrivener's error, and because Jones Scott can be held liable under the retaliation provision of the NYSHRL, the retaliation claims against her (and the other individual Defendants) are not foreclosed by the statute. *See Everett v. N.Y.C. Dep't of Educ.*, No. 21-CV-7043, 2023 WL 5629295, at *11, *14 (S.D.N.Y. Aug. 31, 2023) (noting that NYSHRL proscribes discrimination by an "employer," and retaliation by "any person").

2. FMLA Claims

Plaintiff also asserts claims for interference and retaliation in violation of FMLA, both of which Defendants contend fail.

a. Interference

To state a claim of interference of rights under the FMLA, a plaintiff must plead that "(1) [he] is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) [he] was entitled to leave under the FMLA; (4) that [he] gave notice to defendants of [his] intentions to take leave; and (5) defendants denied [him] benefits to which [he] was entitled by the FMLA." *Esser v. Rainbow Advert. Sales Corp.*, 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2006) (quotation marks omitted). Defendants assert that Plaintiff fails to satisfy the fifth element of this claim. (Defs.' Mem. 13.) Plaintiff raises three potential theories of interference: (1) the improper disclosure of Plaintiff's confidential information; (2) discouragement of Plaintiff's taking leave; and (3) repeatedly rejecting Plaintiff's certifications and demanding additional information. (*See* Am. Compl. ¶¶ 110–11, 112; Defs.' Mem. 13, 15, 17; Pl.'s Opp'n 10.)

The first theory identified by Plaintiff is the alleged disclosure of confidential information to a coworker, who asked about Plaintiff's upcoming surgery prior to his taking leave. (Am. Compl. ¶ 112.) The Amended Complaint specifically alleges that Defendant Burke Rehabilitation shared Plaintiff's personal medical information with his colleagues to "humiliate and sham[e] him for taking leave." (*Id.* ¶ 113.) Defendants note that the provision of FMLA that protects confidential medical records, 29 C.F.R. § 825.500(g), does not explicitly provide for a private right of action, nor has one been recognized by the Second Circuit. (Defs.' Mem. 14.) However, several courts within the Second Circuit have found this provision to provide an private right of action. *See Mineo v. Town of Hempstead*, No. 22-CV-4092, 2024 WL 1077874, at *10 (E.D.N.Y. Feb. 23, 2024) ("Cases in this Circuit have found that [29 C.F.R. § 825.500(g)] offers individuals a private right of action."), *report and recommendation adopted*, 2024 WL

1072569 (E.D.N.Y. Mar. 12, 2024); *Mahran v. Benderson Dev. Co., LLC*, No. 10-CV-715, 2011 WL 1467368, at *4 (W.D.N.Y. Apr. 18, 2011) (finding that the "FMLA permits private civil actions to enforce its provisions," including as to § 825.500(g), and accordingly denying motion to dismiss FMLA claim premised on a violation thereof where the plaintiff had "pled an intentional disclosure of medical information to his co-workers that caused him mental and emotional anguish"). Moreover, the Second Circuit has recognized generally that "[t]he FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer'. . . should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (citing *Nevada Dep't of Hum. Res. v. Hibbs,* 538 U.S. 721, 724–25 (2003)).[2] The Court is persuaded that Plaintiff may bring a private right of action pursuit to this provision.

---

[2] Nor have other circuits ruled directly on this issue. *See Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (declining to determine if a private right of action exists because the FMLA regulation did not govern plaintiff's actions). A few courts have construed claims raising violations of this provision as FMLA interference claims. *See Withers v. Johnson*, 763 F.3d 998, 1005 (8th Cir. 2014) (noting that "FMLA regulations . . . require that [disclosed] records be kept confidential" but finding regulations were not violated and thus plaintiff "failed to make a submissible case of interference with his FMLA rights"); *Scarbrough v. Virginia Coll., LLC*, No. 18-CV-738, 2019 WL 121277, at *1 (N.D. Ala. Jan. 7, 2019) ("Though courts have not settled whether the violation of this duty by itself gives rise to a cause of action, courts consider recordkeeping failures as evidence for claims of interference with FMLA rights." (citation omitted)). District courts across the country have generally avoided grappling with this issue by limiting their review to the sufficiency of the complaint or evidence, or finding the plaintiff's claim waived. *See Marrero-Valentin v. Puerto Rico CVS Pharmacy LLC*, No. 21-CV-1330, 2026 WL 1146627, at *10 (D.P.R. Apr. 28, 2026) (deeming the plaintiff's claim under this provision waived where defendant challenged the existence of a private right of action but plaintiff did not respond); *Jones v. Velocity Tech. Sols. LLC*, No. 19-CV-2374, 2020 WL 4430636, at *4 (E.D. Cal. July 31, 2020) (noting it is not settled whether there is a private right of action but even assuming there was one, plaintiff failed to state a claim), *report and recommendation adopted,* 2020 WL 5909058 (E.D. Cal. Oct. 6, 2020); *Holtrey v. Collier Cnty. Bd. of Cnty. Comm'rs*, No. 16-CV-34, 2017 WL 119649, at *2 (M.D. Fla. Jan. 12, 2017) (noting that it is "unsettled" whether the provision provides a private right of action, but limiting review to sufficiency of complaint because defendant failed to challenge existence of private right of

Defendants contend that even if a private right of action exists under this provision, Plaintiff's allegations are insufficient because they contain only speculative assertions that Defendants told others about Plaintiff's confidential medical information. It is true that the only allegation brought by Plaintiff connecting Defendants to the alleged disclosure is that "[u]pon information and belief, Defendant Burke Rehabilitation shared Plaintiff's personal medical information with his colleagues." (Am. Compl. ¶ 113.) However, "the *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citation and quotation marks omitted). Here, further details as to when and how Defendants might have shared Plaintiffs' medical information with others are under Defendants' particular control. *Jimenez v. City of New York*, No. 14-CV-2994, 2014 WL 5089392, at *6 (S.D.N.Y. Oct. 9, 2014) ("The facts relating to this

---

action, and finding plaintiff adequately stated a claim); *Holland v. Shinseki*, No. 10-CV-908, 2012 WL 162333, at *13 (N.D. Tex. Jan. 18, 2012) (declining to determine if a private right of action exists where defendant challenged only the sufficiency of evidence at summary judgment); *Ekugwum v. City of Jackson, Miss.*, No. 09-CV-48, 2010 WL 1490247, at *3 (S.D. Miss. Apr. 13, 2010) (noting that because "the [defendant] seems to accept the existence of a private cause of action, the [c]ourt will do the same without deciding the merits of the issue" and denying the defendants' motion for summary judgment on this claim); *Walker v. Gambrell*, 647 F. Supp. 2d 529, 539 n.5 (D. Md. 2009) (noting "it is not settled whether this provision gives rise to a private right of action for disclosure" but finding that even if it did, the plaintiff would not have a claim); *Johnson v. Moundsvista, Inc.*, No. 01-CV-915, 2002 WL 2007833, at *7 (D. Minn. Aug. 28, 2002) (assuming arguendo that a private right of action exists but finding plaintiff failed to show a tangible injury resulting from the disclosure, as required by analogous ADA provision).

One district court outside this Circuit has indicated it recognizes a private right of action under this provision. *See Gilliard v. Ga. Dep't of Corr.*, No. 10-CV-3269, 2012 WL 12951863, at *39 (N.D. Ga. Mar. 2, 2012) (recognizing a private right of action under 29 C.F.R. § 825.500(g) in finding that confidentiality of the plaintiff's medical information was protected under FMLA and the FMLA permits private civil actions to enforce its provisions (citing, *inter alia*, *Sista*, 445 F.3d at 174)), *aff'd*, 500 F. App'x 860 (11th Cir. 2012).

alleged disclosure [of, inter alia, medical records] are within the possession and control of the defendants, thus pleading upon information and belief is appropriate in this case.”). Therefore, Plaintiff’s allegations that a coworker asked about his surgery, and that upon information and belief Burke Rehabilitation improperly shared the fact of his surgery with others, are sufficient to survive a motion to dismiss. (*See* Am. Compl. ¶¶ 112–113 (alleging that “before his scheduled surgery[] a coworker . . . approached Plaintiff and inquired about his upcoming operation” and that “[u]pon information and belief Defendant Burke Rehabilitation shared Plaintiff’s personal medical information with his colleagues to humiliate and sham[e] him for taking leave”).)

Equally unavailing is Defendants’ argument that the information at issue does not fall under 29 C.F.R. § 825.500(g), because Plaintiff does not allege that Burke Rehabilitation “disclosed any of the confidential medical records *created for the purpose of FMLA*,” but rather that Burke Rehabilitation informed his coworkers of the operation. (Defs.’ Mem. 14–15 (emphasis added).) Defendants obscure the fact that Plaintiff alleged he told his supervisors and human resources about his operation *for the purpose of obtaining leave*. (*See* Am. Compl. ¶ 109.) Because Plaintiff alleges that Burke Rehabilitation “shared Plaintiff[’s] medical leave cause,” namely, his surgery, with his coworkers, he has sufficiently alleged “a violation of the privacy of the medical information that he submitted . . . to secure his . . . leave.” *Mahran*, 2011 WL 1467368, at *4; *cf. Jones*, 2020 WL 4430636, at *4 (holding disclosure of stroke did not fall under FMLA provision because plaintiff did not allege that he notified defendants of his stroke “for [the] purpose of obtaining leave from work”). This is sufficient “to survive dismissal at the pleading stage.” *Mahran*, 2011 WL 1467368, at *4.

The Court determines that Plaintiff has sufficiently stated a claim based on the alleged improper disclosure of his confidential medical information.

The second theory of FMLA interference put forth by Plaintiff is that Defendants discouraged him from taking medical leave by discussing being short staffed and "press[ing] the timing of Plaintiff's surgery." (Am. Compl. ¶ 110.) As a result of this pressure, Plaintiff alleges he postponed his surgery. (*Id.*) Defendants assert that "the comments alleged by Plaintiff simply do not rise to the level of interference." (Defs.' Mem. 17.)

"Courts in this Circuit require a plaintiff proceeding on a 'discouragement theory' to [plead] that [he] 'attempted to assert [his] FMLA rights but was discouraged from doing so in such a way that would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 327 (S.D.N.Y. 2024), *appeal withdrawn*, No. 24-519, 2025 WL 830748 (2d Cir. Feb. 10, 2025); *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 536 (S.D.N.Y. 2009) (same); s*ee also Hockenjos v. Metro. Trans. Auth.*, No. 14-CV-1679, 2016 WL 2903269, at *9 (S.D.N.Y. May 18, 2016) (finding no discouragement where supervisors criticized plaintiff's job performance but did not refer to his leave). Defendants' alleged remarks about staffing issues and pressing the date of Plaintiff's surgery do not rise to the level of discouragement. *Cf. Tieu*, 717 F. Supp. 3d at 327 (holding supervisor telling employee she should be grateful someone would cover for her during maternity leave not sufficient to proceed on discouragement theory); *Reilly*, 620 F. Supp. 2d at 536 (holding comment about scheduled caesarian section date being inconvenient would not deter an employee of ordinary firmness); *Golden v. New York City Dep't of Env't Prot.*, No. 06-CV-1587, 2007 WL 4258241, at *3 (S.D.N.Y. Dec. 3, 2007) (holding that plaintiff did not show that his supervisor's repeated mockery of his back injury "would have deterred an employee of ordinary firmness" from requesting or taking leave); *accord Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022) (denying summary judgment on discouragement claim where

supervisor told the plaintiff "don't take any more FMLA. If you do so, you will be disciplined"). Accordingly, the Court agrees with Defendants that Plaintiff's claim for FMLA interference based on these comments cannot be sustained.

Finally, Plaintiff alleges Defendants interfered with his FMLA rights by "repeatedly reject[ing] or return[ing] his certification [for leave], demanding 'additional information' and revisions, and refus[ing] to approve his leave" until the certification met Defendants' specifications, causing a two-week delay to his leave approval. (Am. Compl. ¶ 111.) However, requiring certification for FMLA leave does not violate the provisions of the statute. *See De Figueroa v. New York*, 403 F. Supp. 3d 133, 154 (E.D.N.Y. 2019) ("The [employer] may require any request for FMLA leave to be supported with documentation from a doctor." (citing 29 U.S.C. § 2613(a)); *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 431 (S.D.N.Y. 2004) ("FMLA permits an employer to require that employees substantiate a request for leave for treatment of a serious health condition by submitting a medical certification issued by the health care provider"); 29 U.S.C. § 2613(a) ("An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee."). By contrast, FMLA's implementing regulations "*expressly require* employers to 'advise an employee whenever the employer finds a certification incomplete or insufficient,' to 'state in writing what additional information is necessary to make the certification complete and sufficient,' and to 'provide the employee with seven calendar days . . . to cure any such deficiency.'" *Alejandro v. New York City Dep't of Educ.*, No. 15-CV-3346, 2017 WL 1215756, at *21 (S.D.N.Y. Mar. 31, 2017) (quoting 29 C.F.R. § 825.305(c)) (emphasis in original). And "[i]f the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(c).

Defendants' seeking additional information in response to Plaintiff's leave request, and failing to grant the request until the certification was complete, thus fall well within the regulatory boundaries of FMLA and do not constitute interference with his rights under that statute. Plaintiff's FMLA interference claims with respect to the certification requirements are dismissed.

b. Retaliation

To set forth a *prima facie* case of FMLA retaliation, the Plaintiff must establish: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Defendants urge the Court to dismiss Plaintiff's FMLA retaliation claim on the basis that Plaintiff has not alleged a sufficient causal connection giving rise to an inference of retaliatory intent. (Defs.' Mem. 19.) Plaintiff asserts that he faced a wide range of retaliatory actions after taking leave, including "discipline, heightened scrutiny, and termination of his employment." (Pl.'s Opp'n 12.) Specifically, Plaintiff asserts that following his return he was "nitpicked, hyper-monitored, and . . . repeatedly confined to the stifling elevator post." (Pl.'s Opp'n 14.) He also asserts that Defendants' failure to accommodate his wearing a backpack "bolster[s] retaliation" and that being written up for using the bathroom was not "equivalent terms and conditions" upon his return from leave, as is required by FMLA. (Pl.'s Opp'n 14–15.)

Plaintiff returned from FMLA leave in early January 2022. (Am. Compl. ¶ 114.) Plaintiff alleges a few retaliatory actions which fell within the one- to two-month period which courts in this Circuit have held is "generally sufficient to make a prima facie causation showing."

*Murray v. City of New York*, No. 23-CV-10031, 2024 WL 3553266, at *9 (S.D.N.Y. July 26, 2024) (italics omitted); *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-CV-8716, 2024 WL 1117180, at *15 (S.D.N.Y. Mar. 13, 2024) (same); *Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020) (summary order) (same).

First, Plaintiff alleges he was staffed on the elevator, which had poor ventilation that exacerbated his asthma symptoms, immediately upon his return. (Am. Compl. ¶ 116.) Defendants counter that any retaliatory nature of this assignment is belied by the fact that Plaintiff was assigned to this post prior to his leave, (Defs.' Mem. 20), and the Court agrees. An inference of retaliation does not arise where "timing is the only basis for a claim of retaliation," and the alleged adverse employment actions are part of "an extensive period of progressive discipline" that began "well before the plaintiff had ever engaged in any protected activity." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see also Ramsey v. City of New York*, No. 06-CV-173, 2009 WL 637157, at *9 (S.D.N.Y. Mar. 10, 2009) (finding no causal connection where Plaintiff was "subject to repeated warnings and suspensions throughout 2003" but the "protected conduct began in February 2004"); *Vital v. Interfaith Med. Ctr.*, No. 96-CV-363, 2001 WL 901140, at *6 (E.D.N.Y. July 31, 2001) (holding the plaintiff could not establish causation because he had already been terminated before the protected activity had taken place).[3] Because the alleged retaliatory actions "occurred both before and after [the

---

[3] Although the foregoing cases are from contexts outside the FMLA, they are premised on statutes with functionally equivalent anti-retaliation provisions and frameworks. *See, e.g.*, *Dressier v. New York City Dep't of Educ.*, No. 10-CV-3769, 2012 WL 1038600, at *15 (S.D.N.Y. Mar. 29, 2012) (explaining that "FMLA retaliation claims are analyzed under the same . . . standards as Title VII retaliation claims"); *Chowdhury v. Sadovnik*, Nos. 17-CV-2613, 17-CV-2614, 2017 WL 4083157, at *6 (E.D.N.Y. Sept. 14, 2017) (applying the same standard to ADEA retaliation).

protected activity], Plaintiff has not established any inference that those actions were retaliatory." *Figueroa v. Garland*, No. 21-CV-7849, 2022 WL 17539114, at *16 (S.D.N.Y. Dec. 6, 2022). In other words, Plaintiff has merely alleged that he was "reinstated to [his] position with the same responsibilities" after taking leave, which does not demonstrate retaliatory intent. *Monaco v. DXC Tech. Servs., LLC*, No. 18-CV-372, 2021 WL 1723238, at *6 (E.D.N.Y. Apr. 30, 2021). Without any other allegations linking Plaintiff's being stationed in the elevator to his taking FMLA leave, the Court cannot infer retaliatory intent from this action.

Plaintiff also alleges that in January 2022, Vermiglio-Kohn "aggressively pursued and questioned him" when Plaintiff attempted to use the bathroom with his backpack, which he required due to complications from his surgery. (Am. Compl. ¶¶ 118–119.) Additionally, in spring 2022, Vermiglio-John and Jones issued a formal write-up censuring him for wearing his backpack during work. (Am. Compl. ¶¶ 126, 128.) While Plaintiff does not provide other allegations relating to retaliatory intent, such as comments linking these actions to Plaintiff's FMLA leave specifically, on a motion to dismiss, "the showing of discriminatory intent may be met by a lesser showing than needed to make out a *prima facie* case," and thus "the temporal inference alone" may sustain the fourth element of an FMLA claim. *Kurtanidze*, 2024 WL 1117180, at *15 (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). The temporal proximity here suffices to give rise to an inference of retaliatory intent, and thus Defendants' Motion is denied as to the retaliation claim stemming from these actions.

Plaintiff also alleges retaliatory actions that took place more than two months after he returned from leave, including nitpicking and extreme monitoring by his supervisors in June 2022 and threats to write him up for taking bathroom breaks. (Am. Compl. ¶¶ 130–131.) He also alleges that he was terminated in November 2022. (Am. Compl. ¶ 159.) These alleged

retaliatory actions took place between six and ten months after he took leave. "In the absence of any further evidence suggesting retaliation, months of separation between protected activity and alleged retaliation cannot be considered very close." *Miller v. McHugh*, 814 F. Supp. 2d 299, 321 (S.D.N.Y. 2011) (finding temporal proximity of "at least five months" insufficient to establish a causal connection); *see also Harrisman v. City of New York Dep't of Transp.*, No. 19-CV-2986, 2020 WL 5211043, at *5 (S.D.N.Y. Sept. 1, 2020) (same for a period of three to four months). Plaintiff presents no additional allegations indicating that these actions were taken in retaliation for his FMLA leave. *Cf. Kurtanidze*, 2024 WL 1117180, at *15 (finding inference of retaliatory intent bolstered by comments about plaintiff taking leave); *Peterson v. Long Island R.R. Co.*, No. 10-CV-480, 2010 WL 2671717, at *4 (E.D.N.Y. June 30, 2010) ("degrading comments" regarding plaintiff's leave sufficient to establish circumstances giving rise to inference of retaliatory intent). Accordingly, Plaintiff has failed to establish the fourth element of a retaliation claim with respect to these actions, and claims premised on these adverse employment actions are dismissed.

III. Conclusion

For the reasons set forth above, Defendants' Motion is granted in part and denied in part. Count Two is dismissed against Valerie Vermiglio-Kohn, Pauline Jones, and Tresal Jones Scott. Count Three is dismissed against Valerie Vermiglio-Kohn. Count Six is dismissed with respect to the FMLA interference claims based on a discouragement theory and the leave certification requirements. Count Six is also dismissed with respect to the FMLA retaliation claims pertaining to Plaintiff's being assigned to the elevator post and the alleged retaliatory acts occurring in and after June 2022. The Clerk of Court is respectfully directed to terminate the pending Motion at Dkt. No. 24.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge